IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALFONSO PERCY PEW | : | CIVIL ACTION |
| | : | |
| v. | : | No. 25-4925 |
| | : | |
| CHARLES ROSS | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez** **September 30, 2026**

Pro se Plaintiff Alfonso Percy Pew, a prisoner at SCI Phoenix, brings this action under 42 U.S.C. § 1983 against Correctional Officer Charles Ross, asserting violations of his Eighth and Fourteenth Amendment rights. Pew alleges Ross violated his rights under the Eighth Amendment by preventing him from obtaining a medically prescribed colonoscopy outside the prison and violated his Fourteenth Amendment equal protection rights by treating him differently from other similarly situated inmates without a rational basis for doing so. Ross has moved to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Because Pew's allegations, construed liberally, are sufficient to plead a plausible claim that Ross was deliberately indifferent to Pew's serious medical needs by intentionally and unnecessarily interfering with Pew's access to a scheduled medical procedure, the motion will be denied as to Pew's Eighth Amendment claim. Pew's equal protection claim will be dismissed.

**BACKGROUND**[1]

[1] The following facts are drawn from Pew's Complaint and the exhibits to the Complaint, which this Court may consider in evaluating Ross's motion to dismiss. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Given Pew's pro se status and as part of the Court's obligation to construe pro se pleadings liberally, the Court has also considered the allegations in Pew's response to the motion to dismiss. *See Rister v. Yadkin Bank*, 714 F. App'x 170, 172-73 (3d Cir. 2017) (per curiam) recognizing that "[a]s part of the effort to construe a pro se litigant's pleadings liberally, . . . it may be proper to consider certain material outside a pro se litigant's complaint and exhibits when ruling on a motion to dismiss"); *Nichols v. Phillips*, No. 17-2604, 2018 WL 286740, at *2 n.2 (E.D. Pa.

Pew is serving a life sentence in the custody of the Pennsylvania Department of Corrections (DOC). He is currently incarcerated at SCI Phoenix but has spent time at other prisons in the Commonwealth. Compl. ¶¶ 3, 9, ECF No. 1-3. He is on the DOC's "Chronic Care List," and since 1993, he has been designated as a "Z-Code." *Id.* ¶¶ 6-8. According to the Complaint, Pew's Z-Code status means he "is to be assigned in single cell occupant housing status as a Pennsylvania Lifer prisoner with a mental health history on the Pennsylvania Department of Corrections active mental health roster who is prescribed psychotropic medication." *Id.* ¶ 7. The Complaint also refers to Pew's "SMI" or "D-Code SMI" status, *id.* ¶¶ 9, 18 & Ex. C, which Pew elsewhere explains refers to "Serious Mental Illness"[2] and is an independent reason why Pew is to be housed in a single cell. *See* ECF No. 12 at 2[3]; Compl. ¶ 9.

Pew's claims stem from a missed colonoscopy he was scheduled to receive at an outside facility (Grandview) in 2023. *See* Compl. ¶ 17. Pew alleges he was not able to obtain the procedure because Ross, a correctional officer assigned to the infirmary, issued him a disciplinary misconduct report and had him removed from the medical transport list after Pew refused to be

---

Jan. 3, 2018) (considering facts alleged in opposition to a motion to dismiss "in light of the liberal review accorded to pro se pleadings").

[2] DOC policy defines "Serious Mental Illness" as "[a] substantial disorder of thought or mood, which significantly impairs judgment, behavior, capacity or recognize reality, or cope with the ordinary demands of life." Pa. Dep't of Corr., Policy No. 13.8.1, *Access to Mental Health Care*, Glossary of Terms (effective Jan. 24, 2022), https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/13.08.01-access-to-mental-health-care.pdf (last visited Sept. 29, 2026); *see also id.* § 2.B.

[3] ECF No. 12 consists of Pew's motion in opposition to Ross's motion to dismiss, brief in opposition to the motion, and the exhibits to both. Because these materials were docketed as a single document, in citing to ECF No. 12, the Court uses the pagination supplied by the ECF system.

housed in an infirmary cell with up to four other inmates the night before the procedure. *See id.* ¶¶ 4, 10, 15-16, 18-21, 28, 31.

According to the misconduct report, which is attached as an exhibit to Pew's Complaint, on October 23, 2023, Ross attempted to move Pew from cell 1035 to cell 1039, where Pew would be housed with other inmates during his colonoscopy prep. Compl. Ex. F. Pew refused to move, stating his Z-Code status precluded him from being housed with other inmates. *Id.* Ross told Pew his Z-Code status was "temporarily halted" while he was housed in the infirmary and gave Pew one final direct order to move, which Pew refused. *Id.* Ross then charged Pew with refusing to obey an order and presence in an unauthorized area. *Id.*[4]

After Pew refused to be moved, he was placed in a single cell—3B-1029—which he describes as a "Psychiatric[] Observation Cell." Compl. ¶ 19 & Ex. D; ECF No. 12 at 7. The following day, however, Pew did not receive the scheduled colonoscopy, allegedly because Ross had him removed from the medical transport list. *See* Compl. ¶¶ 15-16, 31; ECF No. 12 at 3, 7, 13-14, 16-18.

Pew filed a grievance against Ross for attempting to place him in a cell with other inmates despite his "Z-Code single cell status D-Code S.M.I." Compl. Ex. C. The grievance also named a prison psychologist (Fernandez) who reportedly stated Pew could be housed with other inmates. *Id.* The grievance was denied, as were Pew's appeals. *See id.* Exs. D-E, L. In their denials, prison officials noted prison policy permits inmates with Z-Code status to be housed in dormitory housing

[4] Pew was found guilty of both charges after a what he contends was an unfair disciplinary hearing on November 1, 2023 and received two days of "DC Sanction Time." Compl. ¶¶ 22-23 & Ex. G. He pursued several rounds of appeals within the prison, but the hearing officer's decision was upheld at each level. *Id.* Exs. H-K.

if staff deem it appropriate[5] and that Pew was not ultimately placed in a single cell in any event. *See id.* Exs. D-E, L.

Pew alleges, however, that before Ross attempted to move him, he was already in a single cell in the infirmary on the order of the Medical Director and with the knowledge of the Charge Nurse, who made sure no one was placed in the cell with Pew.[6] *See* ECF No. 12 at 7-8, 10, 13, 17. Indeed, Pew maintains the Medical Director and Charge Nurse moved other inmates in order to place Pew alone for his colonoscopy Prep. *Id.* at 7. He further alleges that after the Medical Director and Charge Nurse left for the day, Ross ordered him to move from the single cell into a cell with others—and did so unnecessarily, in contravention of medical orders, and out of animus and hatred. *Id.* at 8, 10, 13-14, 17; Compl. ¶ 20. Pew maintains that although he refused to be housed with other inmates in the infirmary, he never refused to undergo colonoscopy prep in the infirmary. *See* Compl. ¶ 29.

According to the Complaint, Ross has a length history of harassing and mistreating inmates in the infirmary, particularly Z-Code inmates who are single-celled, and has also punished other "Z-Code Single Cell" inmates for refusing to be housed with other inmates in the infirmary by

[5] The applicable policy provides: "An inmate assigned a Z-Code due to an inability to double cell, is not necessarily precluded from open dormitory housing if staff believe the inmate or others will not be jeopardized as the result of the dormitory housing placement." Pa. Dep't of Corr., Policy No. 11.2.1, *Reception and Classification*, § 5.C.11.c. (effective June 19, 2023), https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/11.02.01%20Reception%20and%20Classification.pdf (last visited Sept. 29, 2026). Pew alleges Ross is using the policy "to hinder [him] from going on outside Hospital Transport to receive Colonoscopy." Compl. ¶ 10.

[6] The Superintendent's response to Pew's appeal of his misconduct relating to his refusal to move to a different cell states "[t]he Infirmary Wards are dormitory style housing," Compl. Ex. J, but it is not clear from this reference whether the infirmary ward nevertheless contains multiple cells. Moreover, at the motion to dismiss stage, the Court must accept Pew's allegations as true.

removing them from the "transport list to needed medical facilities on the outside." Compl. ¶¶ 12, 14-15. Pew alleges that as a "Z-Code Single Cell Lifer" for the past 35 years, he has never been required to be housed with other inmates prior to a hospital transport. *Id.* ¶¶ 9, 30-31.

In July 2025,[7] Pew commenced this § 1983 action by filing a Complaint against Ross in the Court of Common Pleas of Montgomery County, alleging violations of his Eighth and Fourteenth Amendment rights.[8] Pew seeks damages against Ross as well as declaratory and injunctive relief prohibiting Ross and other prison officials from placing any other inmates with him in the infirmary while he undergoes preparation for his colonoscopy. Ross removed the case to this Court and filed the instant motion to dismiss.[9]

---

[7] Although Pew's Complaint is dated February 27, 2025, it apparently was not received by the state court until July 2025.

[8] Pew also alleges Ross's refusal to allow him to obtain a colonoscopy outside the prison violates the prohibition of "cruel punishments" under Article I, Section 13 of the Pennsylvania Constitution. Compl. ¶ 33. "Pennsylvania does not recognize a private right of action for damages in a lawsuit alleging a violation of the Pennsylvania Constitution." *Moss v. Pennsylvania*, 838 F. App'x 702, 708 (3d Cir. 2020) (citing *Jones v. City of Philadelphia*, 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006)); *see also Gary v. Braddock Cemetery*, 517 F.3d 195, 207 n.4 (3d Cir. 2008). And to the extent that Pew seeks relief other than damages, the Court does not address his state constitutional claim separately because the Pennsylvania prohibition on cruel punishments has been held to be coextensive with the Eighth Amendment. *See Tolbert v. Weiner*, No. 22-1228, 2022 WL 17251290, at *4 (E.D. Pa. Nov. 28, 2022).

[9] As Ross notes, Pew is a frequent litigant in both the Eastern District of Pennsylvania and the Third Circuit. *See, e.g.*, *Pew v. Wetzel*, No. 21-5501, 2022 WL 138072, at *3 (E.D. Pa. Jan. 13, 2022) (describing Pew's litigation history). Because Pew has accrued more than three "strikes" under 28 U.S.C. § 1915(g), he may not bring a civil action in this Court under the in forma pauperis statute unless he demonstrates he was "in imminent danger of serious physical injury" at the time the complaint was filed. *Id.* Ross argues Pew remains subject to the three-strike rule even though he filed this case in state court, where he was granted leave to proceed in forma pauperis, and Ross removed the case federal court. *See* Def.'s Mem. Supp. Mot. Dismiss 2 n.1 (citing *Bartelli v. Beard*, No. 08-1143, 2008 WL 4363645, at *7 (M.D. Pa. Sept. 24, 2008)), ECF No. 9. Notably, Ross does not seek dismissal (or remand) of the case on this basis. And such relief would not be warranted in any event. Section 1915(g) limits the ability of a prisoner with three strikes to "bring a civil action . . . under this section," i.e., the federal in forma pauperis statute. Having filed his complaint in state court, Pew did not bring this action in federal court. Nor does he seek leave to

## LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a Rule 12(b)(6) motion, a court must assume the truth of all well-pleaded factual allegations, construe the facts and the reasonable inferences therefrom "in a light most favorable to the [plaintiff,]" and "determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Labs., LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (alteration in original) (citations omitted). Where, as here, the plaintiff is proceeding pro se, the court must construe the complaint liberally, holding it "to less stringent standards than formal pleadings drafted by lawyers." *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

## DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The complaint must "aver facts to show the defendant['s] personal involvement in the alleged

---

proceed in forma pauperis before this Court as Ross, the removing party, already paid the filing fee. *See Camps v. Scholtz*, No. 17-1895, 2017 WL 3736663, at *4 (D.N.J. Aug. 30, 2017) (holding § 1915(g) "only applies to actions filed in federal court by plaintiffs seeking to proceed [in forma pauperis]" and "does not provide a basis for dismissal of a complaint that was properly filed in state court and removed by a defendant to federal court"); *cf. Dooley v. Wetzel*, 957 F.3d 366, 377 n.9 (3d Cir. 2020) (holding a suit brought in state court and removed to federal court does not count as a strike under § 1915(g), which "speaks only to suits *brought* in *federal* court").

misconduct," which requires "particular 'allegations of personal direction or of actual knowledge and acquiescence.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Here, as noted, Pew alleges violations of his Eighth Amendment right to adequate medical care and his Fourteenth Amendment equal protection rights. As discussed below, construing Pew's allegations liberally in his favor, the Court finds he has pled a plausible Eighth Amendment claim against Ross, but not a plausible equal protection claim. The motion to dismiss will therefore be granted in part and denied in part.

Under the Eighth Amendment, convicted prisoners have a right "to receive adequate medical care." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003); *see also Montanez v. Price*, 154 F.4th 127, 140 (3d Cir. 2025). To state a claim for a violation of this right, a prisoner must allege "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Montanez*, 154 F.4th at 140 (quoting *Natale*, 318 F.3d at 582).

A medical need is "serious" for Eighth Amendment purposes "if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quoting *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)). "[A] prison official acts with 'deliberate indifference' if he knows of the serious medical need yet disregards it by failing to act reasonably." *Id.* at 140-41; *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (holding deliberate indifference requires that a prison official "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"). The requisite knowledge of a prisoner's serious medical need "can be inferred from circumstantial

evidence, including the obviousness of the serious health need." *Montanez*, 154 F.4th at 141 (citing *Farmer*, 511 U.S. at 842). Deliberate indifference may be found where "(1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, and (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs." *Pearson v. Prison Health Servs.*, 850 F.3d 526, 538 (3d Cir. 2017) (citing *Lanzaro*, 834 F.2d at 347).

In moving to dismiss Pew's Eighth Amendment claim, Ross does not directly challenge whether Pew had a serious medical need, and the Court assumes, for purposes of this motion, that he did.[10] Ross instead argues the claim fails because he is a correctional officer, not a medical professional, and Pew has not shown Ross "ha[d] any control over his medical treatment, care, or appointments," or that he was aware Pew was "denied a necessary procedure." Def.'s Mem. Supp.

---

[10] Ross refers to the colonoscopy as "diagnostic," Def.'s Mem. Sup. Mot. Dismiss 4, but that characterization alone is not dispositive of whether Pew has a serious medical need. The colonoscopy was scheduled by prison medical providers, and although the Complaint does not identify the reason for the procedure, Pew alleges, in an affidavit accompanying the Complaint, that he is experiencing bleeding in his stool, pain when defecating and urinating, and below-normal platelets. Aff. Am. Facts to Date Concerning Physical Bodily Harm ¶¶ 7-9, ECF No. 1-5. He also alleges he has a family history of cancer. *Id.* ¶ 9. Moreover, Ross's own exhibits suggest the procedure was ordered "to screen[] for high risk for colon cancer and disability." Def.'s Mem. Opp'n Mot. Dismiss Ex. B, ECF No. 9-2. Pew's allegations, together with Ross's exhibits, provide a sufficient basis to infer that Pew's colonoscopy was ordered due to a serious medical need. *See Santos v. Annikos*, No. 3:23-cv-00281, 2024 WL 4957335, at *8 (D. Nev. Oct. 18, 2024) (holding plaintiff stated a colorable Eighth Amendment claim for deliberate indifference to serious medical needs against doctor who said a colonoscopy would be ordered based on plaintiff's GI symptoms and family history of colorectal cancer but then failed to complete the referral), *report and recommendation adopted*, 2024 WL 4868349 (D. Nev. Nov. 22, 2024); *Henderson v. Caplan*, No. 3:23-cv-530, 2023 WL 4564418, at *3 (D. Conn. July 17, 2023) (assuming plaintiff had a serious medical need to warrant a colonoscopy where procedure was ordered "to check [plaintiff] for cancerous polyps in response to rectal bleeding"); *Merrival v. South Dakota*, No. 15-5023, 2015 WL 3618237, at *4 n.5 (D.S.D. June 9, 2015) (finding a "medically prescribed colonoscopy constitutes a serious medical need").

Mot. Dismiss 5, ECF No. 9. Rather, the Complaint alleges "Ross simply ordered Pew to the infirmary to perform his prep, which Pew refused to comply with." *Id.*

Ross relies on *Spruill v. Gillis*, in which the Third Circuit held that "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." 372 F.3d 218, 236 (3d Cir. 2004). The issue in *Spruill* was whether the prisoner-plaintiff had stated a deliberate indifference claim against the unit manager of his housing unit, who failed to notify health care providers after learning the plaintiff had fallen and injured himself. The Court of Appeals found the plaintiff's allegations deficient because (1) insofar as the claim concerned the unit manager's conduct after the plaintiff was under medical care, the plaintiff had not alleged the unit manager was aware of the asserted inadequacies in his medical treatment, and (2) insofar as the claim concerned the period before the plaintiff was under medical care, he failed to allege his condition was so dire and obvious that the unit manager's failure to summon immediate attention amounted to deliberate indifference. *Id.* at 236-37.

Like the plaintiff in *Spruill*, Pew does not allege Ross knew or had reason to believe prison doctors were providing inadequate treatment. But Pew's claim is fundamentally different from the claim considered in that case. Pew does not take issue with the medical care prescribed for him—a colonoscopy. Instead, he alleges Ross interfered with the prescribed medical treatment by ordering him to move from single cell within infirmary to a cell with other inmates—unnecessarily and against medical orders—and then had him removed from the medical transport list when he refused to comply. The allegation that Ross, who is not a doctor, intentionally prevented Pew from receiving a medically prescribed procedure is sufficient to state a plausible claim of deliberate indifference against Ross. The decision in *Douglas v. Wellpath Holding*, No. 25-2905, 2026 WL

1590602 (E.D. Pa. June 3, 2026), is instructive in this regard. In *Douglas*, the prisoner-plaintiff brought an Eighth Amendment denial of medical care claims against various medical and correctional defendants stemming from the prison's cancellation of a scheduled medical procedure after the plaintiff, a blind Z-Code inmate housed in a single cell, objected to being housed in an infirmary cell with other inmates the night before the procedure. *Id.* at *1-2. The court dismissed the claim against the correctional defendants based on the plaintiff's failure to identify any individual responsible for the housing decision. *Id.* at *5 & n.7. But in doing so, the court rejected the argument that requiring the plaintiff to spend the night in the infirmary with other inmates was necessarily objectively reasonable, finding the plaintiff's allegations that he had made three prior trips to the urologist without this housing arrangement and that the infirmary had single cells to accommodate Z-coded inmates supported a reasonable inference of deliberate indifference on the theory that the housing decision "delayed [the plaintiff's] medical treatment for a non-medical reasons and constituted an 'arbitrary and burdensome' procedure that prevented him from receiving treatment for which he had already been recommended." *Id.* at *5 n.7. The same is true here, so the motion to dismiss will be denied as to Pew's Eighth Amendment claim.

Pew also alleges Ross violated his equal protection rights under the Fourteenth Amendment. Compl. ¶ 33. The basis for this claim is not entirely clear from Pew's Complaint, which alleges that Ross treated other "Z-Code Single Cell" inmates who refused to be housed with other inmates in the infirmary the same way he treated Pew—namely, by issuing a disciplinary report to the inmates and having them removed from the "transport list to needed medical facilities on [the] outside." *Id.* ¶¶ 12-15. "To state an equal protection claim, [Pew] must allege that he was treated differently than other similarly situated inmates, and that this different treatment was the

result of intentional discrimination based on his membership in a protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016). Here, however, the Complaint alleges the opposite.

In his opposition to the motion to dismiss, Pew clarifies that he is pursuing an equal protection claim based on a "class of one" theory. ECF No. 12 at 3, 14-15. To state a "class of one" equal protection claim, a plaintiff must allege "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Phillps v. Cnty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006)). The opposition, like the Complaint, references the two other Z-Code inmates to whom Ross issued misconduct reports for declining to be placed with other inmates in the infirmary and who were denied outside hospital trips. ECF No. 12 at 12, 15. It also references a third "Z-Code Single Cell" inmate who refused to be placed with other inmates in the infirmary but was not given a misconduct and was still allowed to go to outside hospital visits for cancer treatment. *Id.* at 3, 14-15, 24-25. Pew alleges there is no rational basis for this third inmate's different treatment. Given Pew's allegation that Ross treated other similarly situated inmates (including the two inmates identified in the Complaint) the same as Pew, the identification of a single inmate who was treated differently is insufficient to state a class of one equal protection claim because the Complaint as a whole does not plausibly suggest Pew was treated differently from others similarly situated. Moreover, the defendant in this case is Ross, yet there is no allegation that Ross had any involvement with the lone inmate who was treated differently. The motion to dismiss will therefore be granted as to Pew's equal protection claim. Because the defect in the claim is based on Pew's own allegations, the Court finds amendment would be futile as to this claim and will dismiss the equal protection claim with prejudice.

**CONCLUSION**

The motion to dismiss will be granted as to Pew's Eighth Amendment medical care claim and denied as to his Fourteenth Amendment equal protection claim. The Court will address Pew's request for emergency injunctive relief at the telephonic Rule 16 conference, which will be scheduled by separate order.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.